**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GARY CLAY, | : | |
| | : | |
| Appellant | : | No. 1359 EDA 2018 |

Appeal from the Order Entered April 27, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0118521-1980.

BEFORE:   OTT, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED OCTOBER 18, 2019**

Gary Clay appeals, *pro se*, from the order denying his motion for DNA testing filed pursuant to Section 9543.1 of the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court summarized the relevant facts as follows:

> At trial, the Commonwealth presented the testimony of Philadelphia police detectives Francis Selgrath and Anthony Bonsera, Philadelphia police officer Kevin Corr, and [the victim].  [Clay] presented the testimony of Mary McNeill Greenwell and Carole Wardlaw.  Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence established the following.

> The victim . . . was sleeping in her home located at 102 West Johnson Street in Philadelphia, during the early morning hours of September 3, 1979.  No one else was in the home with her at the time.  Around 6:00 A.M., [the

---

[*] Retired Senior Judge assigned to the Superior Court.

victim] was awakened by a squeaking noise from the floor. She then heard another noise, and saw [Clay] standing in her bedroom doorway. [The victim] recognized [Clay] as an employee of a thrift store that she had visited earlier that week. After [the victim] had purchased some fire place tools at the store, [Clay] had dropped the purchases off at [the victim's] home.

When [the victim] saw [Clay] in the doorway, she immediately screamed. [Clay] then jumped on top of her and began to punch her in the face and head. In order to silence [the victim], [Clay] stuck his fingers down her throat, and later gagged her. [Clay] also tied [the victim's] hands behind her back, tied her feet, and placed a pillow case over her head. He then vaginally penetrated her with his penis. After approximately twenty seconds, [Clay] got up and rummaged around [the victim's] room and then left. Following the incident, [the victim] was interviewed by detectives and identified [Clay] as her attacker [from] a photo array.

PCRA Court Opinion, 7/31/18, at 3-4 (citations omitted).

The PCRA court further summarized the procedural history as follows:

On June 26, 1981, following a jury trial before the Honorable Lynne Abraham, [Clay] was convicted of rape, burglary, aggravated assault, and robbery. On May 13, 1982, the Court imposed an aggregate sentence of twenty-five to fifty years of incarceration. On May 25, 1984, the Superior Court affirmed [Clay's] judgment of sentence, and on October 12, 1984, [our] Supreme Court denied *allocatur*.

On August 4, 2009 [Clay] filed a *pro se* [PCRA petition], in which he claimed that the Court's sentence was illegal and an abuse of discretion. As Judge Abraham had retired from the bench, the PCRA matter was reassigned to the undersigned[.] On May 27, 2011, pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988), PCRA counsel filed a motion to withdraw as counsel and a letter stating that there was no merit to [Clay's] claims for collateral relief. On July 28, 2011, the Court dismissed [Clay's] petition. The Superior Court affirmed the dismissal of [Clay's] PCRA petition on August 7, 2012.

On November 15, 2016, [Clay] filed a *pro se* motion for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1 of the PCRA. In particular, [Clay] requested DNA testing of the victim's clothing, rape kit, and other items. On March 2, 2017, the Commonwealth responded to [Clay's] motion, claiming that the requested DNA evidence was unavailable because it has been discarded pursuant to established protocol. However, the Commonwealth also stated in its response that the Philadelphia Police Department's Evidence Custodian, Lieutenant Thomas Macartney, was continuing to search for physical evidence in the case.

On March 21, 2017, [Clay] filed a motion for appointment of counsel, which the Court granted on April 25, 2017[.] The Court ordered an evidentiary hearing regarding the availability of DNA evidence, which was conducted on September 15, 2017. At the conclusion of that hearing, [Clay's] counsel requested an opportunity to conduct further investigation, which the Court granted. The hearing was resumed on April 27, 2018. Because counsel's investigation failed to uncover any new material, the hearing concluded without the submission of any additional evidence. The Court found that no DNA evidence was available for testing, and therefore denied [Clay's] motion. In addition, after conducting a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998), the Court granted [Clay's] motion to proceed *pro se* on appeal.

PCRA Court Opinion, 7/31/18, at 1-2 (citations omitted). This appeal followed.

Both Clay and the PCRA court have complied with Pa.R.A.P. 1925.

Clay now raises the following issues on appeal, which we reproduce verbatim:

A. PCRA Court Has "Err" For failure To grant [Clay's] Application To Withdraw PCRA Counsel and Be Allowed To Proceed Pro –Se Timely At The Evidentiary Hearing To [Cross] Examine Lieutenant Thomas Macartney?

B. PCRA Court Has "Err" For failure To Allow [Clay] To Testify Once PCRA Court Was Placed On Notice That

[Clay] wishes <u>To Testify Which Can Be supported By The Record?</u>

C. PCRA Court Has "Err" For [failure] To allow [Clay] To Call Relevant Witnesses That Had Pertinent Information Regarding Samples And Other Items identified Within His Motion For forensic DNA Testing <u>That Were Destroyed</u>?

D. PCRA Counsel Has "Err["] For Failure To rule on application For a Bail After Finding of Guilt Knowing That The Commonwealth Destroyed <u>His DNA Evidence</u>?

E. Ineffective Assistance Of PCRA Counsel For Failure To Produce Evidence That Were In PCRA Counsel Possession Of Documents At The Evidentiary Hearing Relating To Ronald Castille, a Former District Attorney Approved To have Samples and Other Items Identified Within [Clay's] Motion For Forensic DNA Testing Be Destroyed, Without [Clay's] Consent. The Former District Attorney Ronald Castille and Police Department Held Ex Parte Proceedings With Judge Hirst That Granted their Motion For Destruction Of Property <u>Without Defense Logging Any Objection</u>?

Clay's Brief at 2.[1]

We review an order denying a motion for post-conviction DNA testing as follows:

> Generally, the [PCRA] court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

---

[1] Despite our granting two extensions of time, the Commonwealth has failed to file a brief in this appeal.

***Commonwealth v. Williams***, 35 A.3d 44, 47 (Pa. Super. 2011) (citations omitted).

Section 9543.1, in pertinent part, reads as follows:

§ 9543.1.  Postconviction DNA testing

(a) Motion.—

   (1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

   (2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

* * *

(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

   (ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

   (iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes

and may be used as evidence against the applicant in other cases.

(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted[.]

* * *

(3) present a *prima facie* case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted[.];

* * *

(d) Order.—

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) motion is made in a timely manner and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

(i) would establish the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S.A. § 9543.1.[2]

In addition to the above requirements, the PCRA petitioner may request forensic DNA testing so long as that evidence is available for testing as of the date of the motion. ***See***, ***e.g.***, ***Commonwealth v. McLaughlin***, 835 A2d 747, 750-51 (Pa. Super. 2003); ***Commonwealth v. Robinson***, 682 A.2d 831 (Pa. Super. 1996).[3] The PCRA court's denial of Clay's motion for DNA testing was based upon its determination, after two hearings, that no evidence was available for DNA testing. ***See*** PCRA Court Opinion, 7/31/18, at 6.

In his issues raised on appeal, Clay essentially challenges this determination. After careful review, we conclude that the Honorable Glenn B. Bronson has prepared a thorough and well-reasoned opinion that correctly disposes of each of Clay's claims either because the claim is refuted by the record or otherwise without merit. We therefore adopt Judge Bronson's July 31, 2018 opinion as our own in disposing of the present appeal. ***See id.*** at 6-11 (concluding: a) Clay never requested to proceed *pro se* during Lieutenant Macartney's testimony at the September 15, 2017 hearing; b) the PCRA court

_____

[2] We note that the Pennsylvania legislature rewrote this section, effective December 24, 2018. ***See*** Act-2018-147, § 1.

[3] The current version of Section 9543.1 now expressly requires that the DNA evidence exist at the time the motion is filed. ***See*** 42 Pa.C.S.A. § 9543.1(a)(2) (providing "[t]he evidence shall be available for testing as of the date of the motion").

never denied Clay the opportunity to testify; c) Clay did submit a letter to the court in which he asked to call twelve witnesses, but counsel represented him at the time and was free to determine that these witnesses were irrelevant to Clay's motion for DNA testing; d) the PCRA court in fact denied Clay's motion for bail; and e) Clay's claim of PCRA counsel's ineffectiveness lacks arguable merit since the documents to which Clay referred to were cumulative of evidence introduced at the evidentiary hearing that established that property was destroyed "pursuant to *ex parte* applications from government officials to a judge, which resulted in a court order approving the destruction").[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/19

---

[4] The parties are directed to attach a copy of the trial court opinion to this memorandum in the event of further proceedings.

IN THE COURT OF COMMON PLEAS  FILED
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION  2018 JUL 31 PH 2: 51

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
CP-51-CR-0118521-1980 DISTRICT
OF PENNSYLVANIA

COMMONWEALTH OF                 :    CP-51-CR-0118521-1980
PENNSYLVANIA                    :

                                CP-51-CR-0118521-1980 Comm. v. Clay, Gary
            v.                                Opinion

GARY CLAY

8143508811

OPINION

BRONSON, J.                                     July 31, 2018


## I. PROCEDURAL HISTORY

On June 26, 1981, following a jury trial before the Honorable Lynne Abraham, defendant Gary Clay was convicted of rape (18 Pa.C.S. § 3121), burglary (18 Pa.C.S. § 3502), aggravated assault (18 Pa.C.S. § 2702), and robbery (18 Pa.C.S. § 3121). On May 13, 1982, the Court imposed an aggregate sentence of twenty-five to fifty years incarceration. On May 25, 1984, the Superior Court affirmed defendant's judgment of sentence, and on October 12, 1984, the Supreme Court denied *allocatur*.

On August 4, 2009, defendant filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), in which he claimed that the Court's sentence was illegal and an abuse of discretion. As Judge Abraham had retired from the bench, the PCRA matter was reassigned to the undersigned trial judge. On May 27, 2011, pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), PCRA counsel filed a motion to withdraw as counsel and a letter stating that there was no merit to defendant's claims for collateral relief. On July 28, 2011, the Court dismissed defendant's petition. The Superior Court affirmed the dismissal of defendant's PCRA petition on August 7, 2012.

On November 15, 2016, defendant filed a *pro se* motion for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1 of the PCRA. In particular, defendant requested DNA testing of the victim's clothing, rape kit, and other items. *See* Motion for DNA Ballistic Forensic Testing Finger Prints Testing of Clothing and Swab Testing at p. 1. On March 2, 2017, the Commonwealth responded to defendant's motion, claiming that the requested DNA evidence was unavailable because it has been discarded pursuant to established protocol. However, the Commonwealth also stated in its response that the Philadelphia Police Department's Evidence Custodian, Lieutenant Thomas Macartney, was continuing to search for physical evidence in the case. *See* Commonwealth's Motion to Dismiss Defendant's Petition for Post-Conviction DNA Testing at p.5 n.3.

On March 21, 2017, defendant filed a motion for appointment of counsel, which the Court granted on April 25, 2017, appointing Gary S. Server, Esquire to represent defendant. The Court ordered an evidentiary hearing regarding the availability of DNA evidence, which was conducted on September 15, 2017. At the conclusion of that hearing, defense counsel requested an opportunity to conduct further investigation, which the Court granted. N.T. 9/15/17 at 40-42. The hearing was resumed on April 27, 2018. Because counsel's investigation failed to uncover any new material, the hearing concluded without submission of any additional evidence. The Court found that no DNA evidence was available for testing, and therefore denied defendant's motion. N.T. 4/27/18 at 6-7. In addition, after conducting a hearing pursuant to *Commonwealth v. Grazier*, 713 A.2d 81, 82 (Pa. 1998), the Court granted defendant's motion to proceed *pro se* on appeal. N.T. 4/27/18 at 11-15.

2

Defendant has now appealed from the Court's order denying his motion for DNA testing, raising five issues. *See* Statement of Matters on Appeal ("Statement of Matters").[1] The issues set forth in the Statement of Matters are listed verbatim below in their entirety, without corrections:

a.  PCRA Court has "err" for failure to grant defendant's Application to Withdraw PCRA Counsel and be allowed to Proceed Pro-Se timely at the evidentiary hearing to cross examine Lieutenant Thomas Macartney;

b.  PCRA Court has 'err' for failure to allow defendant to testify once PCRA Court was placed on notice that defendant wishes to testify which can be supported by the record;

c.  PCRA Court has 'err' for failure to allow defendant to call relevant witnesses that had pertinent information regarding samples and other items identified within his Motion for Forensic DNA testing that were destroyed;

d.  PCRA Counsel has 'err' for failure to rule on Application for a Bail After Finding of Guilt knowing that the Commonwealth destroyed his DNA evidence;

e.  Ineffective Assistan of PCRA Counsel for failure to produce evidence that were in PCRA Counsel possession of documents at the evidentiary hearing relating to Ronald Castille a former Distirict Attorney approved to have samples and other items idenitified within defendant's Motion for Forensic DNA testing be destroyed within defendant's consent. The former District Attorney Ronald Castille and Police Department held ex-parte proceedings with Judge Hirst that granted this motions for destruction of property without defense logging any objection.

Statement of Matters at ¶¶ a-e. For the reasons set forth below, defendant's claims are without merit, and the Court's order denying defendant's motion for post-conviction DNA testing should be affirmed.

## II. FACTUAL HISTORY

At trial, the Commonwealth presented the testimony of Philadelphia police detectives Francis Selgrath and Anthony Bonsera, Philadelphia police officer Kevin Corr, and Sandra

---

[1] Although defendant labels his first claim as "1," he proceeds to label his following four claims as "b"-"e." For consistency, defendant's first claim will be referred to as "a."

Speight. Defendant presented the testimony of Mary McNeill Greenwell and Carole Wardlaw. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.

The victim, Sandra Speight, was sleeping in her home located at 102 West Johnson Street in Philadelphia, during the early morning hours of September 3, 1979. N.T. 6/24/81 at 5. No one else was in the home with her at the time. *Id.* Around 6:00 A.M., Ms. Speight was awakened by a squeaking noise from the floor. N.T. 6/24/81 at 6. She then heard another noise, and saw defendant standing in her bedroom doorway. *Id.* Ms. Speight recognized defendant as an employee of a thrift store that she had visited earlier that week. N.T. 6/24/81 at 11. After Ms. Speight had purchased some fire place tools at the store, defendant had dropped the purchases off at Ms. Speight's home. N.T. 6/24/81 at 11, 13-15.

When Ms. Speight saw defendant in the doorway, she immediately screamed. N.T. 6/24/81 at 7. Defendant then jumped on top of her and began to punch her in the face and head. *Id.* In order to silence Ms. Speight, defendant stuck his fingers down her throat, and later gagged her. N.T. 6/24/81 at 9. Defendant also tied Ms. Speight's hands behind her back, tied her feet, and placed a pillow case over her head. N.T. 6/24/81 at 18. He then vaginally penetrated her with his penis. N.T. 6/24/81 at 21. After approximately twenty seconds, defendant got up and rummaged around Ms. Speight's room and then left. N.T.6/24/81 at 22-23. Following the incident, Ms. Speight was interviewed by detectives and identified defendant as her attacker in a photo array. N.T. 6/24/81 at 34-36.

## III. DISCUSSION

The Post Conviction Relief Act authorizes a defendant in custody to file a motion for DNA testing. Whether the defendant is entitled to such testing is governed by criteria set forth in

the statute. *See* 42 Pa.C.S. § 9543.1. Among the requirements is that the evidence sought to be tested "shall be available for testing as of the date of the motion." 42 Pa.C.S. § 9543.1(a)(2). Where the evidence defendant wishes to test has been lost or destroyed, there is nothing to test and the motion is properly denied. *See Commonwealth v. McLaughlin*, 835 A.2d 747, 750-51 (Pa. Super. 2003) (motion for DNA testing of victim's rape kit properly denied where rape kit was no longer in existence).

Here, at the evidentiary hearing on defendant's motion, the Commonwealth presented the testimony of Lieutenant Thomas Macartney, evidence custodian for the Philadelphia Police Department. Lieutenant Macartney testified that at the request of the Commonwealth, he conducted a search for any paperwork or physical evidence related to defendant's case. N.T. 9/15/17 at 12, 14. According to Lieutenant Macartney, the police department's computerized log books revealed that there were three property receipts associated with the case.[2] N.T. 9/15/17 at 13-14. However, the log books did not identify the property that was documented on each receipt. N.T. 9/15/17 at 25. Therefore, Lieutenant Macartney also conducted a search for the physical property receipts, but was unable to locate them. N.T. 9/15/17 at 21, 23.

The computerized records did show, however, that the evidence documented on two of the three property receipts had been destroyed in 1987 and 1988, respectively, pursuant to court orders. N.T. 9/15/17 at 14-21. Although there was no record that the evidence recorded on the third property receipt had been destroyed, there was also no record of that property ever being received by the evidence custodian unit. N.T. 9/15/17 at 14. The lieutenant explained that it was possible that the third property receipt was created but never used because it was not needed or

---

[2] A police department property receipt is a record used to record all items of property obtained by the police during an investigation. Each receipt is assigned a unique number. They are used to keep track of property and to establish chain of custody.

was voided after a mistake was made. N.T. 9/15/17 at 33. Moreover, the lieutenant, along with two police officers, searched all storage facilities where the evidence might have been stored, but could not locate the property receipt or any evidence related to this case. N.T. 9/15/17 at 27, 29. In addition, Lieutenant Macartney reviewed records that would have revealed if any evidence in the case had been signed out by anyone, and it had not. *Id.*

Based on his thorough investigation, Lieutenant Macartney concluded that with a reasonable degree of certainty, all of the evidence from this case had been destroyed. N.T. 9/15/17 at 35. The Court found Lieutenant Macartney to be credible, and concluded, on that basis, that there was no evidence available in this case for DNA testing. N.T. 4/27/18 at 6. For that reason, the Court denied defendant's motion. *Id.* Defendant now contends that the Court's ruling should be overturned for five reasons, each of which is discussed below.

*A. Court's Denial of Defendant's Motion to Proceed Pro Se at Evidentiary Hearing*

Defendant first claims that the Court erred for failing to grant defendant's "Application to Withdraw PCRA Counsel," so that he could proceed *pro se* at the evidentiary hearing and cross-examine Lieutenant Macartney. Statement of Matters at ¶ a. However, defendant never requested to proceed *pro se* during Lieutenant Macartney's testimony during the September 15, 2017 evidentiary hearing. Rather, the record reveals that following Mr. Server's cross-examination of the lieutenant, defendant said to Mr. Server: "I would like for you to ask the witness [Macartney] that was just on the stand a couple of questions." N.T. 9/15/17 at 36. Defendant then specified two additional areas for questioning, which were then covered by Mr. Server. N.T. 9/15/17 at 36-38. After that, the hearing was concluded, except for a continuance to allow Mr. Server an opportunity to obtain the notes of testimony from the 1981 trial in order to see if they revealed any helpful material. When the hearing resumed on April 27, 2018, Mr.

6

Server reported that he had found no helpful material. As a result, the Court then made findings and issued its ruling based on the record from the September 15, 2017 hearing.

While defendant did ask to represent himself, he failed to do so until December 9, 2017, when he filed an Application to Withdraw PCRA Counsel and Proceed Pro-Se. However, by that time, the entire evidentiary hearing had been concluded except for Mr. Server's opportunity to check the notes of testimony. When the hearing resumed in April of 2018, the Court advised defendant that he could not take over *pro se* once the matter was nearly completed. N.T. 4/27/18 at 7. Moreover, defendant's complaints about Mr. Server, including his failure to call Governor Rendell and the trial judge, Lynne Abraham, as witnesses, were baseless and not grounds to grant an untimely request to proceed *pro se*. However, the Court explained to defendant that he could proceed *pro se* on appeal if he wished to do so, which defendant ultimately elected to do. N.T. 4/27/18 at 7, 11-15.

Accordingly, defendant's request to represent himself was untimely and properly denied. No relief is due.

### B. *Failure of Court to Permit Defendant to Testify at Evidentiary Hearing*

Defendant next claims that the Court erred by not allowing defendant to testify at the evidentiary hearing. Statement of Matters at ¶ b. This claim is without merit.

It is true that at the September 15, 2017 evidentiary hearing, when asked by defense counsel if he wished to testify, defendant stated the following: "Yes, I would like to testify. Also, I would like for you to ask the witness [Lieutenant Macartney] that was just on the stand a couple of questions." N.T. 9/15/17 at 36. What followed was some additional questioning of Lieutenant Macartney, and argument regarding counsel's desire to bifurcate the hearing so counsel could conduct additional investigation. After that, the Court was required to end the

7

hearing for the day since the time allotted for the video hookup to the prison had expired. N.T. 9/15/17 at 36-42.[3] When the hearing resumed on April 27, 2018, defendant never again requested to testify.

Accordingly, the Court never denied defendant the opportunity to testify at the evidentiary hearing. No relief is due.

### C. Failure of Court to Permit Defendant to Call Relevant Witnesses

Defendant next claims that the Court erred by not allowing defendant to call witnesses who had pertinent information regarding the DNA evidence that was destroyed. Statement of Matters at ¶ c. This claim is without merit.

Hybrid representation of defendants in post-conviction proceedings is not permitted. *Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011). As stated above, defendant was represented by counsel throughout these proceedings and failed to request to represent himself until the matter was nearly completed. As a result, the Court denied his request to represent himself as being untimely. *See*, pp. 6-7, *supra*. It is true that defendant submitted a letter to the Court on January 2, 2018, asking to call twelve witnesses at the hearing, including former district attorney Ronald Castille, and the trial judge, Lynne Abraham. Mr. Server, as defense counsel, was free to determine that these witnesses were irrelevant to the motion here at issue, and to refrain from calling them. In any event, defendant at no time proffered any evidence from these witnesses that would have any bearing on his application for DNA testing. No relief is due.

---

[3] The hearing was conducted without defendant's presence in court by using an audio/video hookup with the prison where defendant was incarcerated. Defendant had waived his right to be physically present and agreed to proceed by video on that day. N.T. 9/15/17 at 7-8.

*D. Failure of Court to Rule on Defendant's Application for Bail*

Defendant next claims that the Court erred when did not rule on defendant's application for bail after finding that the Commonwealth destroyed defendant's DNA evidence.[4] Statement of Matters at ¶ d. This claim is frivolous, since the Court did rule on defendant's bail application, denying it by order dated February 9, 2018. In any event, defendant was not entitled to bail.

On December 9, 2017, defendant submitted an Application for Bail After Finding of Guilt Regarding Newly Discovered Information of Crucial Documents ("Application for Bail"), claiming that he was entitled to bail because the evidence adduced at the September 15, 2017 evidentiary hearing showed that the Commonwealth destroyed the DNA evidence from defendant's case. *See* Application for Bail, filed December 9, 2017 at p. 1. In support of his claim, defendant argued that during the same period that the DNA evidence was destroyed, the Philadelphia District Attorney's Office, who approved the destruction, conducted training seminars on racially discriminatory practices during jury selection. *Id.*

"[A] Post Conviction Relief Act petitioner may be admitted to bail pending disposition of the petition when such an order would be necessary in the interest of justice in certain exceptional cases for compelling reasons." *Commonwealth v. McMaster,* 730 A.2d 524, 527 n.1 (Pa. Super. 1999) (citing *Commonwealth v. Bonaparte,* 530 A.2d 1351, 1354-55 (Pa. Super. 1987) (per Kelly, J., with two judges concurring in result)). For example, bail may be appropriate when it is "so obvious to the…court that the petitioner will ultimately prevail on the merits of his [PCRA petition] that it would be manifestly unjust for him to continue to serve one

---

[4] While in his Statement of Matters, defendant states that "PCRA counsel" erred for failing to rule on defendant's application for bail, the Court assumes that defendant intended to claim that the Court erred, since defendant submitted his application to the Court for its ruling on the matter.

more day of incarceration as the result of a conviction which made a mockery of justice." *Bonaparte*, 530 A.2d at 1355 (internal quotation omitted).

Here, there were no compelling reasons for admitting defendant to bail. At the time of defendant's application, Lieutenant Macartney had already credibly testified that there was no evidence available for testing and that all destruction of evidence took place pursuant to court orders. There was certainly no reason to believe that defendant was likely to prevail on his motion. No relief is due.

### E. *PCRA Counsel's Failure to Produce Evidence at the Evidentiary Hearing*

Defendant's final claim is that PCRA counsel was ineffective for failing to produce evidence at the evidentiary hearing regarding the destruction of evidence. In particular, defendant claims that his counsel was in possession of documents showing that former district attorney Ronald Castille and members of the Police Department held *ex parte* meetings with Judge Hirst in order to have property destroyed without defendant's consent. Statement of Matters at ¶ e. This claim is without merit.

Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice.

10

*Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694).

At the September 15, 2017 evidentiary hearing, Lieutenant Macartney explained that the destruction of property in this case was done pursuant to two court orders. According to Lieutenant Macartney, the police commissioner requested the destruction of the property, along with unrelated property from other cases. N.T. 9/15/17 at 16, 18, 20. The city solicitor's office also requested the destruction. N.T. 9/15/17 at 17-18, 21. In response, the Court ordered that the evidence be destroyed. N.T. 9/15/17 at 19, 21. At the hearing, the Commonwealth presented the actual court orders, which stated that the District Attorney's Office approved the destruction. *See* Commonwealth Exhibit C-1.

Accordingly, the record at the hearing established that the property was destroyed following the completion of defendant's direct appeals pursuant to *ex parte* applications from government officials to a judge, which resulted in a court order approving the destruction. Therefore, any documents in the possession of defense counsel which would have proven that the District Attorney and the police department applied to the judge for the destruction of documents without giving notice to the defendant would have been cumulative and irrelevant to defendant's motion. As a result, defense counsel could not have been ineffective for failing to introduce such documents at the hearing. No relief is due.

11

## IV. CONCLUSION

For all of the foregoing reasons, the Court's order denying defendant's motion for post-conviction DNA testing should be affirmed.

BY THE COURT:

_____
GLENN B. BRONSON, J.

Commonwealth v. Gary Clay                    CP-51-CR-0118521-1980
Type of Order: 1925(a) Opinion

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P.114:

**Defense Counsel/Party:**

> Gary Clay
> AM-8402
> SCI Forest
> PO Box 945
> Marienville, PA 16239

Type of Service:    ( ) Personal ( ) First Class Mail (X) Other, please specify: *Certified Mail*

**District Attorney:**

> Lawrence Goode, Esquire
> Interim Supervisor, Appeals Unit
> Office of the District Attorney
> Three South Penn Square
> Philadelphia, PA 19107-3499

Type of Service    ( ) Personal ( ) First Class Mail (X) Other, please specify: *Interoffice Mail*

**Additional Counsel/Party:**

> Joseph D. Seletyn, Esquire
> Prothonotary
> Office of the Prothonotary – Superior Court
> 530 Walnut Street, Suite 315
> Philadelphia, PA 19106

Type of Service:    ( ) Personal (X) First Class Mail ( ) Other, please specify:

**Dated: July 31, 2018**

Kaitlin D. Shire
Law Clerk to Hon. Glenn B. Bronson